# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In Re the Detention of: | No.  54392-3-II |
| P.R., | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — P.R. appeals an order granting a petition for his involuntary commitment for 180 days under RCW 71.05.280(3) and .290(3), arguing he was not notified of his right to demand a trial by jury which violated his due process rights.  P.R. also argues that because he has a constitutional right to a jury trial, any waiver of this right must be knowing, intelligent, and voluntary.  We hold that P.R cannot raise these issues for the first time on appeal because he has not shown that they are manifest constitutional errors, and we affirm the commitment order.

## FACTS

In 2018, P.R. was deemed incompetent to stand trial after the State charged him with several violent felony offenses.[1]  Because P.R's competency could not be restored, the court dismissed the charges without prejudice and committed P.R. to the custody and care of the Secretary of the Department of Social and Health Services for evaluation in preparation for filing

---

[1] The State charged P.R. with two counts of second degree assault, felony harassment, harassment, and third degree malicious mischief, for allegedly threatening to kill and trying to run over a man who was taking his son to school.

a petition of civil commitment. The State sought and obtained three separate orders authorizing up to 180 days of involuntary commitment. This appeal concerns the third order.

The first order, entered January 10, 2019, was based on P.R. having a mental disorder, presenting a substantial likelihood of repeating acts similar to the charged criminal behavior, and being gravely disabled.

The State filed a second petition for an additional 180 days of involuntary commitment six months later. P.R. stipulated to the entry of that additional 180-day civil commitment order, which the court entered, stating that the criteria for detention was that P.R. was gravely disabled.

On January 7, 2020, the State filed a third petition for an additional 180-day involuntary treatment on the basis that P.R. had a likelihood to recommit a violent offense and was gravely disabled. On January 13, 2020, the court held a hearing. Counsel for the parties appeared, but P.R. declined to come to court. Counsel noted that P.R. was possibly interested in representing himself, so the court recessed to give counsel for P.R. time to confer with P.R. at the hospital to receive further instructions on how to proceed. After recess, P.R.'s counsel confirmed that P.R. wished to waive his appearance. The court then made an oral ruling that the State had made a prima facie showing that P.R. was charged with a violent felony, and that he presented a substantial likelihood of repeating similar acts. The court set the hearing for the following day.

The next day, which was the final day of his 180-day involuntary treatment period, P.R. did not appear at the hearing. Counsel informed the court that she had advised P.R. of the court's finding and of his rights, and that P.R. told her to move forward with the hearing in his absence. Through counsel, P.R. informed the court that he would not be offering any witnesses. The court ruled that P.R. had voluntarily waived his appearance. The court made no mention of

jury trial rights. The court then proceeded to the merits of the petition, hearing testimony from the State's witness, Dr. Bradley Antonides, a clinical psychologist at Western State Hospital where P.R. was being treated. Based on evidence presented at the hearing, the court ruled that P.R. was gravely disabled and that as a result of a mental disorder, he continued to present a substantial likelihood of repeating acts similar to the charged criminal behavior. In a written order, the court ruled that P.R. waived his appearance. The order did not say that P.R. had waived his right to trial by jury.

P.R. appeals the 2020 order granting the petition for his involuntary commitment. Notice of Appeal to Court of Appeals, *In re Det. of P.R.*, No. 18-6-01414-0 (Wash. Super. Ct. Apr. 15, 2020).

ANALYSIS

P.R. argues that the trial court erred when it granted the State's petition for involuntary commitment in violation of his right to trial by jury. Specifically, P.R. argues that he had a due process right to be notified of his jury trial rights, and, in the alternative, that he had a constitutional right to trial by jury, and that he never waived that right. We hold that P.R. cannot raise these issues for the first time on appeal, because P.R. failed to show that the errors are manifest errors affecting a constitutional right.

I. INVOLUNTARY COMMITMENT

The involuntary commitment act, RCW 71.05, establishes procedures for 72-hour, 14-day, 90-day, and 180-day commitments. The statutes provide a clear method to notify a detained person of their right to a jury trial prior to the hearing when the State seeks involuntary commitment of 14 or 90 days. RCW 71.05.240, 71.05.300(2). Court rules provide that if a jury

trial is not requested after notice is given, it is waived. Mental Proceedings Rules (MPR) 3.3(b). A person has two judicial days to demand a jury; otherwise, "the matter shall be heard without a jury." MPR 3.3(b).[2]

The statute provides different procedures, however, for a person such as P.R. who is detained because he is incompetent to be tried for a violent felony. Under this scheme, the statute does not provide for notice of the right to a jury trial. *See* RCW 10.77.086(4). Because P.R. was committed under RCW 10.77.086(4), no notice of his right to request a jury trial was required.

## II. NO MANIFEST ERRORS AFFECTING A CONSTITUTIONAL RIGHT

A.     *Jury Trial Notice*

P.R. argues that the trial court violated his due process rights by failing to notify him of his statutory right to a jury trial. P.R. contends that this issue involves his constitutional right to due process because RCW 71.05.310 creates a liberty interest implicating the Due Process Clause of the Fourteenth Amendment. The State argues that P.R. cannot raise this issue for the first time on appeal because he did not object to either the court's failure to advise him of his right to trial by jury, or the court's granting of the petition without an express waiver of such right. The State contends that the alleged error is not manifest and not of a constitutional magnitude. We agree with the State.

---

[2] MPR 3.3(b) has not been updated since the procedures for notice of jury trial rights for 90-day appearances were changed in the current RCW 71.05.300 (June 11, 2020). RCW 71.05.300(2) was amended after P.R.'s hearing appearance. Under the current statute, the court does not set a preliminary appearance nor advise the detainee in open court. Instead, the clerk sets a trial setting date and the designated crisis responder gives notice to the detainee and his attorney when a petition is filed, after which the attorney is required to advise the detainee of his or her rights. RCW 71.05.300.

No. 54392-3-II

Ordinarily, we do not consider issues not raised below for the first time on appeal. *In re the Det. of M.S.*, No. 54665-5-II, slip op. at 3 (Wash. Ct. App. Aug. 3, 2021), http://www.courts.wa.gov/opinions/pdf/D2%2054665-5-II%20Published%20Opinion.pdf. However, under RAP 2.5(a)(3), a party may raise a "manifest error affecting a constitutional right" for the first time on appeal. The party asserting error has the initial burden of showing that (1) the error was truly of a constitutional dimension, and (2) that the error was manifest. *M.S.* slip op. at 3.

To determine whether an error is truly of a constitutional magnitude, we look to whether what has been asserted implicates a constitutional interest as opposed to some other form of error. *State v. Grimes*, 165 Wn. App. 172, 186, 267 P.3d 454 (2011). To show that the error is manifest requires a showing of actual prejudice. *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d, 756 (2009) (quoting *State v. Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007)). Actual prejudice requires a plausible showing that "the asserted error had practical and identifiable consequences in the trial of the case." *O'Hara*, 167 Wn.2d at 99. In reviewing actual prejudice, we focus on whether the error is "so obvious on the record that the error warrants appellate review." *O'Hara*, 167 Wn.2d at 100.

Our Supreme Court has held that "the nature of involuntary civil commitment proceedings, together with the provisions of the involuntary commitment act, RCW 71.05, supplies the framework for determining the appropriate due process guaranties applicable to 90-day involuntary commitment proceedings." *In the Matter of the Det. of McLaughlin*, 100 Wn.2d 832, 838, 676 P.2d 444 (1984). "State statutes may create liberty interests that are entitled to the procedural protections of the Due Process Clause of the Fourteenth Amendment." *In re the Det. of Stand*, 167 Wn.2d 180, 187, 217 P.3d 1159 (2009) (quoting *Vitek v. Jones*, 445

5

U.S. 480, 488, 100 S. Ct. 1254, 63 L. Ed. 2d 552 (1980)) (holding that involuntary transfer of prisoner to mental hospital when suffering from mental illness created liberty interest where prisoner could reasonably expect procedural protections to prevent mistaken transfer).

When determining due process rights, we utilize the test from *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).  Under this test, we consider three factors: (1) the private interests affected, (2) the risk of erroneous deprivation of the private interest created by the procedures used, and (3) the State's interest in using the challenged procedure. *Mathews*, 424 U.S. at 335.

Here, P.R. argues that because his liberty was curtailed, he had a due process right to be notified of the statutory right to a jury trial.  The cases cited for his position do not involve RCW 10.77.086(4), which was the statute under which he was committed and which does not provide a mechanism for notice.  But P.R. has failed to undertake the *Mathews* balancing test to show that the statute in question creates a liberty interest requiring procedural due process protections.  Thus, P.R. has not shown that the alleged error is of a constitutional magnitude, and we decline to review the alleged error under RAP 2.5(a)(3). *See M.S.* slip op. at 5.

B.      *Waiver of Right to Jury Trial*

P.R. argues that the "significant liberty interests at stake," require a knowing, intelligent, and voluntary waiver of his jury trial right.  Br. of Appellant at 17.  We hold that P.R. cannot raise this issue for the first time on appeal because he does not have a constitutional right to a jury trial and, thus, cannot show manifest constitutional error.

Involuntary commitment is a "massive curtailment of liberty," which the State cannot constitutionally carry out without due process of law. *In re the Detention of LaBelle*, 107 Wn.2d

196, 201, 728 P.2d 138 (1986) (quoting *Humphrey v. Cady*, 405 U.S. 504, 509, 92 S. Ct. 1048, 31 L. Ed. 2d 394 (1972)); U.S. CONST. amend. XIV; CONST. art. I, § 3.  The Washington Constitution provides that "[t]he right of trial by jury shall remain inviolate."  CONST. art. I, § 21.  But our Supreme Court has recognized a jury trial right in civil commitment proceedings only for indefinite civil commitments, not shorter periods of commitment where the State must file a new petition and carry a burden for recommitment on a periodic basis.  *In the Matter of the Det. of M.W. v. Dep't. of Soc. & Health Servs.*, 185 Wn.2d 633, 663, 374 P.3d 1123 (2016).

To determine whether a right to trial by jury exists in a particular case, we engage in a two-step analysis.  *M.S.* slip op. at 5.  First, we identify the scope of the right to a jury trial in 1889.  *M.S.* slip op. at 5.  Second, we determine whether "the type of action at issue is similar to one that would include the right to a jury trial at that time."  *M.S.*, slip op. at 5 (quoting *M.W.*, 185 Wn.2d at 662).

In *M.S.*, we engaged in this analysis to conclude that persons facing 180-day commitments do not have a constitutional right to a trial by jury.  *M.S.*, slip op. at 6-7.  P.R.'s argument is based on the premise that because his right to a jury trial is constitutional, the right could only be waived by a knowing, voluntary, and intelligent waiver.  But, as discussed in *M.S.*, no such right exists. Because his claim does not involve a constitutional right, P.R. failed to show this issue involved constitutional error.  Therefore, we cannot consider the issue for the first time on appeal.  RAP 2.5(a)(3).

P.R. has failed to show he has a constitutional right to a trial by jury, or a due process right to notice arising from a liberty interest created by statute.  We hold that P.R cannot raise

No. 54392-3-II

these issues for the first time on appeal because they are not manifest constitutional errors.

Accordingly, we affirm the trial court's 180-day commitment order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Lee, C.J.

Cruser, J.